IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ACORN COMPOSITE,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>SENECA, et al,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:09-CV-941 TS |

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons set forth below, the Court will deny the Motion.

## I. Background

This dispute is based on a loan and guaranty. Plaintiff, Acorn Composite Corp., is the lender. The Borrowers, Sand Hollow Development Group LLC ("SHDG"), a Utah limited liability company and Senston Homes, Inc., a Utah corporation, are not parties to this dispute. Although there are three guarantors, David Wilkey, Thomas Seneca, and Troy Belliston, only Mr. Seneca and Mr. Belliston are parties to this action.

The following facts are undisputed. On January 22, 2007, Plaintiff entered into a loan

1

agreement with Borrowers for $6,000,000 in connection with a real estate development project located in Florida. The project apparently consists of two separate pieces of property. Plaintiff alleges that in connection with the loan, Senston and SHDG executed and delivered a Promissory Note under which SHDG promised to pay seventy-five (75) percent and Senston promised to pay twenty-five (25) percent of the loan to Plaintiff.[1] To secure repayment of the loan, Mr. Wilkey and Defendants Seneca and Belliston signed a Personal Guaranty; Mr. Wilkey obligating himself to seventy-five (75) percent and Defendants Seneca and Belliston jointly and severally obligating themselves to the remaining twenty-five (25) percent. Mr. Roche, Plaintiff's principal, has a relationship other than that of lendor-guarantor with Mr. Wilkey because Mr. Roche is the controlling interest holder of Sand Hollow to which Mr. Wilkey also holds interests.[2]

Defendants allege their twenty-five (25) percent obligation extends only to defaults of Senston, while Mr. Wilkey's seventy-five (75) percent responsibility corresponds to SHDG. Beginning September 25, 2009, Plaintiff sent Notices of Default to Defendants and Mr. Wilkey.[3]

The parties dispute that the Guaranty is an absolute guaranty that created an obligation on the part of the Guarantors legally independent of the obligation owing to Plaintiff from SDHG and Senston.

---

[1]The Loan Agreement mentions only the Promissory Note, without any payment requirements attached on page 2, paragraph C(i). The payment obligations are mentioned on page 14, in section 6.14.4 entitled "Loan Repayment Requirements."

[2]Docket No. 16 at n. 2.

[3]Defendants argue the Notices of Default contain incorrect and unsupported demands that fail to properly interpret the language of the Loan Agreement and Personal Guaranty.

**II. Standard of Review**

Summary judgment is proper if the moving party can demonstrate that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.[4] The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.[5] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6] "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial, if he does not so respond, summary judgment, if appropriate, shall be entered against him."[7]

**III. Discussion**

In arguing that summary judgment is appropriate Plaintiff repeatedly refers to the "plain language of the contract."[8] Plaintiff seems to endorse Defendants' position in its Answer that

---

[4] *See* FED. R. CIV. P. 56(c).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7] FED. R. CIV. P. 56(e)(2).

[8] Docket No. 18 at 5, 6, 7, 9, 10.

"the documents speak for themselves."[9] According to these calls for interpretation, the Court finds genuine issues of material fact exist which make summary judgment inappropriate.

Plaintiff argues that the Guaranty executed by the Guarantors expressly created an obligation on the part of the Guarantors independent of the obligations owing to Plaintiff from SHDG and Senston. Plaintiff bases this argument on the following paragraph of the Personal Guaranty signed by Defendants and Mr. Wilkey:

> The undersigned agree to remain fully bound on this Guaranty notwithstanding any extension, renewal, forbearance, modification, waiver, or release, discharge or substitution of any party, collateral or security for the Note or other debt, and the undersigned consent to and waive all notice, presentment, demand, protest and notice of protest or nonpayment of same. In the event of default, the Creditor may seek payment directly from the undersigned without need to proceed first against Borrowers and Guarantors or any other party or security.

Plaintiff argues that Defendants' duty to pay under the Guaranty contract was triggered when the Borrowers failed to make monthly interest payments, failed to pay property taxes, failed to notify Plaintiff of all lot sales and failed to apply the proceeds received to the outstanding balance of the loan.

Defendants argue that Senston was not in breach of the Loan Agreement at the time the notice of default and complaint were filed so that Defendants had no duty under the Personal Guaranty. Defendants support this argument by making four sub-arguments. First, that the loan was not in default. Second, it was not Senston's responsibility to either set up the interest reserve escrow account or to make all interest payments, and since Defendants are only personal

---

[9] *Id.* at 6.

4

guarantors of Senston, they were not liable regarding interest payments regardless of whether there was a breach regarding those payments or not. Third, that SDHG, not Senston, was liable for paying all property taxes; furthermore, although they were under no such obligation, Senston has at all times remained current on any tax obligations relating to the Senston property. Finally, Defendants argue that Senston has complied with their duty to provide information concerning the sale of lots.

Because the Court must view the facts and allegations in the light most favorable to the non-moving party, for the purposes of this Motion only, the Court must accept as true that Defendants were only responsible for Senston's obligations under the agreement.

Therefore, construing the contract according to its "plain meaning" as urged by Plaintiff, the Court finds Plaintiff is not entitled to a judgment as a matter of law. Section 3.2 of the Loan Agreement deals with the payment of taxes: "In addition to paying taxes and assessments at the Closing as may be required by Lender, SHCH[10] shall pay when due, and before any interest or penalties shall accrue thereon, all federal, state, and local taxes, assessments, charges, levies, or indebtedness constituting a lien on the Loan Collateral."[11]

As to Plaintiffs' argument that Defendants defaulted by failing to make interest payments according to section 6.14 of the Loan Agreement, the Court notes: section 6.14.1 states that SHDG is the developer and shall act as the Borrower's agent, on behalf of SHDG and Senston.[12]

---

[10] Although this entity is not discussed in the briefing, in the agreement it is recognized as Sand Hollow Commercial Holdings, LLC.

[11] Docket No. 12 at 13.

[12] *Id.*

The plain language of this provision states that SHDG will act as an agent for Senston, and reiterates Senston's twenty-five (25) percent liability to pay back the loan. The remainder of the provision discusses the responsibilities of Borrower's agent SHDG.

Considering the plain language of sections 3.2 and 6.14 of the Loan Agreement, Plaintiff has not shown that the Defendants were in breach of their obligations and consequently that they were obligated to pay pursuant to the Guaranty. As to the proper interpretation of these two provisions, the parties have demonstrated that genuine issues of material fact exist. Therefore, summary judgment is inappropriate.

Even if the Court did not find summary judgment to be inappropriate based on the lack of clear evidence regarding a breach, the Court finds summary judgment would not be appropriate based on the Personal Guaranty alone due to the representations Defendants allege were made by Plaintiff to induce them to sign that Guaranty. Plaintiff argues any representations made prior to the agreement are inadmissible under the parol evidence rule.

"The [parol evidence] rule operates, in the absence of fraud or other invalidating causes, to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an *integrated* contract."[13] "If a contract is integrated, parol evidence is admissible only to clarify ambiguous terms; it is not admissible to vary or contradict the clear and unambiguous terms of the contract."[14] "[A]n integrated

---

[13] *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330 (Utah 2008) (citing *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1026 (Utah 1995).

[14] *Id*.

6

agreement [is] 'a writing or writings constituting a final, expression of one of more terms of an agreement.'"[15] "To determine whether a writing is an integration, a court must determine whether the parties adopted the writing "as the *final and complete* expression of their bargain."[16]

> Integration clauses . . . "are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document."[17]

There is a rebuttable presumption that a writing which on its face appears to be an integrated agreement is what it appears to be.[18] "A non-integrated contract may exist where the terms are not ambiguous, but the nature of the agreement itself is unclear."[19] "[C]laims of fraudulent inducement may be supported by parole evidence."[20]

Section 6.11 of the Loan Agreement deals directly with the consistency of documents and is so titled. It states:

> The other Loan Documents are not intended to supercede the provisions of this Agreement, but shall be construed as supplemental thereto. In the event of any inconsistency between the provisions of the other Loan Documents and this

---

[15]*Id*. (quoting Restatement (Second) of Contracts § 209 (1981)).

[16]*Id*. (quoting *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266, 270 (Utah 1972)).

[17]*Id*. (quoting *Ford v. Am. Express Fin. Advisors*, *Inc.*, 98 P.3d 15 (Utah 2004)).

[18]*Becker v. HSA/Wexford Bancgroup, L.L.C.*, 157 F.Supp.2d 1243, 1251 (D. Utah 2001).

[19]*Webb v. R.O.A. General, Inc.*, 804 P.2d 547, 552 (Utah Ct. App. 1991).

[20]*The Burgess Co. v. Riverside Mobile Home Park, L.L.C.*, 2006 WL 2522193, at *1 (August 31, 2006).

Agreement, or in the even the provisions in the other Loan Documents are not as complete or clear as this Agreement, this Agreement shall control. This Agreement shall survive the execution, recording, and filing of the Loan Documents.[21]

Section 6.13 of the Loan Agreement is the integration clause and states that the Agreement is the entire agreement, but the other Loan Documents "used in conjunction with the Loan shall be valid and enforceable according to their provisions."[22]

The Personal Guaranty is not contained within the Loan Agreement, does not include an integration clause and this "other" Loan Document, according to the plain language, should be enforced according to its own provisions. Moreover, the Court finds no language either in the Loan Agreement or Personal Guaranty that clearly states that the language from one agreement is incorporated and governs the other agreement.

Given the alleged statements by Mr. Rocher to Defendants, "Hey, I'm better than a bank, because I will never foreclose on you on the Note" and that they "need not have any concern about being held personally liable"[23] because the agreement was just a formality,[24] and because Plaintiff's principal also holds interest in SHDG which in essence means that he was guarantying a loan to himself, the Court finds there are genuine issues of material fact in dispute regarding the intent and meaning of the agreements. Consequently summary judgment is inappropriate.

---

[21]*Id*. at 18.

[22]*Id*.

[23]Docket No. 16 at 3, 8.

[24]*Id*. at 8.

## IV. Conclusion

Based on the above, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED.

The hearing set for Friday, May 7, 2010 is hereby STRICKEN.

DATED   May 5, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge